IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| CLAUDIA ROHR, | ) | CIVIL 16-00162 LEK-KSC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| CRIME VICTIMS COMPENSATION COMMISSION of the State of Hawai`i, | ) ) ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**ORDER DENYING DEFENDANT'S MOTION TO
DISMISS AMENDED COMPLAINT FILED ON JUNE 6, 2016**

On July 6, 2016, Defendant Crime Victim Compensation Commission of the State of Hawaii ("Defendant" or "the Commission") filed its Motion to Dismiss Amended Complaint Filed on June 6, 2016 ("Motion"). [Dkt. no. 17.] Pro se Plaintiff Claudia Rohr ("Plaintiff") filed her memorandum in opposition to the Motion on September 12, 2016, and Defendant filed its reply on September 19, 2016. [Dkt. nos. 24, 25.] On September 27, 2016, this Court issued an entering order finding this matter suitable for disposition without a hearing pursuant to Rule LR7.2(d) of the Local Rules of Practice of the United States District Court for the District of Hawai`i ("Local Rules"). [Dkt. no. 26.] After careful consideration of the Motion, supporting and opposing memoranda, and the relevant legal authority, Defendant's Motion is HEREBY DENIED for the reasons set forth below.

BACKGROUND

Plaintiff filed this action on April 5, 2016. She filed her Amended Complaint on June 6, 2016, and an errata to the Amended Complaint on August 10, 2016. [Dkt. nos. 14, 21.] Plaintiff states that she is bringing this action as the "sole beneficiary and legal representative of Scott Andrews' estate." [Amended Complaint at ¶ 1.] Plaintiff is Andrews's widow. [Id. at ¶ 9.] Plaintiff brings this action pursuant to: Title II, Part A of the Americans with Disabilities Act ("ADA"), as amended by the Americans with Disabilities Amendments Act of 2008 ("ADAAA"), 42 U.S.C. §§ 12131-34; and its implementing regulations, 28 C.F.R. Part 35. [Id. at ¶ 1.]

According to the Amended Complaint, the Commission "was created by the Hawai`i Legislature to alleviate the physical, mental and financial hardships suffered by victims of violent crime. The Commission provides compensation to victims of violent crimes for their crime-related injuries and losses." [Id. at ¶ 10 (internal quotation marks omitted).] Plaintiff alleges that the Commission is a "public entity," as defined in 42 U.S.C. § 12131(1) and 28 C.F.R. § 35.104, and therefore it is subject to Title II of the ADA, and its implementing regulations. [Id. at ¶ 11.]

Plaintiff alleges that Andrews was seriously injured when he was the victim of criminal assaults on January 28, 2007,

April 21, 2008, and December 12, 2008. He suffered a concussion on January 27, 2007; a concussion, tachycardia, and "a hypertensive episode" on April 21, 2008; and a "first degree heart block" that "was documented [on] December 12, 2008." [Id. at ¶ 14.] According to the Amended Complaint, Andrews "suffered psychological trauma from being a victim of crime with posttraumatic stress (PTSD) issues." [Id. at ¶ 15.] In addition, he had a preexisting condition – "reoccurring major depression or bipolar disorder and anxiety." [Id. at ¶ 13.] As a result of this combination of impairments,

> Andrews experienced extreme emotional distress, hypervigilance, nightmares, trouble sleeping, loss of concentration, and he had to endure intense anxiety when he left his house for any reason, as compared to most people in the general population – mental impairments which substantially limited the major life activities of sleeping, concentrating, thinking, working and interacting with others.
>
> 16. April 21, 2008 Andrews developed reoccurring, episodic physical impairments – hypertension, vertigo, and breathing problems that substantially limited the major life activities of breathing, walking, taking care of the house, working, concentrating, and driving a car, among others, as compared to most people in the general population. Andrews had a series of falls and injuries often hitting his head and receiving gashes to his legs. Andrews' mental/emotional impairments interacted with his physical impairments synergistically.

[Id. at ¶¶ 15-16.] Plaintiff alleges that, at all relevant times, Andrews was an "individual with disabilities" under ADA Title II and its implementing regulations. [Id. at ¶ 19.]

Plaintiff asserts that "Andrews met all the formal legal eligibility requirements to qualify for participation in the [Commission]'s program, with reasonable accommodations." [Id. at ¶ 21 (citing 42 U.S.C. § 12131(2)).]  On December 7, 2009, Andrews submitted an application for victim compensation for the April 21, 2008 assault ("Case No. 09-0857"), and another application for the December 12, 2008 assault ("Case No. 09-0858").  According to Plaintiff, both applications were complete, but only the application for Case No. 09-0858 was timely.  She asserts that the application for Case No. 09-0857 was "untimely due to PTSD," because his "ability to think and communicate about the assault incidents and the steps needed to apply for crime victim compensation was substantially limited by posttraumatic stress issues, reoccurring major depression and anxiety."  [Id. at ¶¶ 21-22.]  Both applications noted that Andrews "was disabled by posttraumatic stress."  [Id. at ¶ 22.]  Andrews submitted letters, dated February 15, 2010 and March 22, 2010, from his treating psychiatrist, explaining his condition and that he was unable to apply earlier.  [Id. at ¶ 23.]

**I.   Case No. 09-0857**

A Commission investigator screened Andrews's application to determine if he qualified to participate in the program.  [Id. at ¶¶ 25, 28.]  Plaintiff alleges that the qualifying criteria the investigator used "tended to screen out

applicants with posttraumatic stress issues from crime victimization that would substantially limit the applicant's ability to think about and communicate about the traumatic incident and take the steps needed to fill out an application and file within 18 months from the traumatic incident." [Id. at ¶ 28.]  Plaintiff argues that the Commission's rules, policies, practices, and procedures regarding an applicant's proof of disability "subjected Andrews to greater scrutiny than others, public stigmatization, and loss of psychiatric information privacy rights, thereby subjecting Andrews to discrimination on the basis of disability in violation of the ADAAA." [Id. (citing 28 C.F.R. § 35.130(b)(3), (7), (8)).]

The Commission has a good cause exception for the application deadline, which applies if the applicant could not file the application within the eighteen-month period "'due to a mental, physical, or legal impairment.'" [Id. at ¶ 29 (quoting Haw. Admin. R. § 23-605-2).]  Plaintiff argues that this standard does not provide the protections for disabled persons that the ADA and Section 504 of the Rehabilitation Act ("Section 504") require. [Id.]  The psychologist who evaluated Andrews's materials for the Commission opined that there was not enough information to determine whether Andrews's preexisting mental impairment would cause him to be unable to submit a timely application.  The psychologist recommended that the Commission

require Andrews's treating psychiatrist to submit all of Andrews's psychiatric records, including the psychiatrist's notes, for the previous two years.  The Commission's executive director and investigator requested these materials from Andrews's psychiatrist without notifying Andrews or obtaining a privacy waiver.  His psychiatrist refused to comply with the request, invoking the Health Information Portability and Accountability Act.  [Id. at ¶¶ 30-34.]

In a July 8, 2010 Administrative Decision and Order ("Case No. 09-0857 Decision"), the Commission's executive director adopted the investigator's findings.  The Case No. 09-0857 Decision found that Andrews's application was untimely and that, without his psychiatrist's notes, Andrews failed to establish good cause.  The decision therefore denied Andrews's application.  Plaintiff argues that the Case No. 09-0857 Decision failed to consider whether Andrews established that he had a disability under the ADA and whether waiving the application deadline was a necessary and reasonable accommodation for his disability.  In addition, Plaintiff alleges that the Commission investigator failed to serve the Case No. 09-0857 Decision on Andrews, even after Andrews informed the Commission by letter that he never received the decision.  [Id. at ¶¶ 35-36, 38.]

Although Andrews did not receive the decision, he received a letter from the Commission informing him of his right

6

to appeal to the Board of Commissioners. Plaintiff argues that the fact that Andrews was not informed of the facts and details of the Case No. 09-0857 Decision violated Andrews's right to due process. [Id. at ¶ 38.] On June 23, 2011, Andrews had a hearing before the Board of Commissioners, which limited the scope of review to the issue of whether there was more evidence of good cause. Andrews participated in the hearing by phone, and Plaintiff apparently also participated. [Id. at ¶¶ 39-40.] Andrews told the Board of Commissioners that

> during the application period he was so traumatized, anxious and hypervigilant that he stayed in the house all the time, that he was so depressed that he gained 70 lbs., and his blood pressure and breathing problems were poorly controlled and life threatening, that his doctor had told him he was dying of congestive heart failure, that he avoided thinking about the traumatic events and could not endure thinking about taking the necessary steps to file an application earlier.

[Id. at ¶ 40.] The Board of Commissioners found that there was insufficient evidence that Andrews was incapable of submitting a timely application. The Board of Commissioners adopted the decision that the Commission investigator drafted, and it became the Commission Decision and Order on July 30, 2011 ("Case No. 09-0857 Commission Decision"). It was served on Andrews on August 5, 2011, and Andrews timely appealed to the State of Hawai`i Third Circuit Court ("State Court"). [Id. at ¶¶ 41-43.]

The State Court dismissed the case for lack of subject matter jurisdiction, and Andrews appealed. On April 5, 2016, the Intermediate Court of Appeals ("ICA") affirmed the State Court. [Id. at ¶ 44.] Plaintiff argues that the Commission initially filed the record on appeal in the State Court under seal from Andrews. According to the Amended Complaint, Andrews did not have access to the un-redacted record until it was transmitted to the ICA, at some point after February 12, 2013. [Id. at ¶ 37.]

## II.   Case No. 09-0858

According to the Amended Complaint, the Commission chair and the two commissioners voted to find that Plaintiff was a victim of a crime and voted in favor of paying his medical bills for the assault that occurred on December 12, 2008. According to the Amended Complaint, although this vote was noted in the Commission's minutes, it was not provided to Andrews until April 24, 2013 because the Commission sealed the record for Case No. 09-0858 until the record on appeal in the consolidated cases was provided to the ICA on appeal on February 12, 2013. Plaintiff alleges that the draft decision and order that the Commission investigator prepared did not reflect the actual decision. According to Plaintiff, the investigator instead questioned whether Andrews was a victim of one of the crimes enumerated in Haw. Rev. Stat. § 351-32 and reduced the award to

8

partial payment of medical bills.  [Id. at ¶¶ 45-49.]  The Commission chair adopted the draft decision on July 30, 2011 ("Case No. 09-0858 Decision").  [Id. at ¶ 52.]  Plaintiff alleges that the investigator's actions had a discriminatory intent.  They had a punitive motivation for "Andrews' and Rohr's protected activity – a civil rights lawsuit against the police and disagreement with prosecutors about the prosecution of the criminal case," in violation of the eligibility requirements for the Victims of Crime Act of 1984 ("VOCA"), 42 U.S.C. § 10601, et seq.[1]  [Id. at ¶ 50 (citing 42 U.S.C. § 10603(b)(1)(F)).]  Plaintiff alleges that the investigator's actions "ridiculed and harassed, and caused the Commission's counsel . . . to ridicule and harass Andrews without regards to his known disabilities which is overt discrimination."[2]  [Id. at ¶ 51.]  Plaintiff also alleges that Andrews was discriminated against in the administration of the Commission's program and services.  [Id. at ¶ 52 (citing 42 U.S.C. § 12132; 28 C.F.R. § 35.130(b)(1)(i), (ii), (iii), (v)).]  Plaintiff alleges that all of these actions "caus[ed] Andrews and Rohr loss of reputation, public

---

[1] Plaintiff alleges that the Commission receives federal grants under VOCA.  [Amended Complaint at ¶ 12.]

[2] Plaintiff points to a statement in the Commission's answering brief in the appeal before the ICA in which counsel wrote that "'Andrews was fortunate to get any award.'"  [Amended Complaint at ¶ 51.]

humiliation, frustration, anger, depression, emotional and physical distress, and loss of health." [Id. at ¶ 51.]

Andrews timely appealed the Case No. 09-0858 Decision. The Case No. 09-0587 Decision and the Case No. 09-0858 Decision became conclusive on April 5, 2016, when the ICA's decision affirming the circuit court's judgment following the dismissal of the consolidated cases became final. [Id. at ¶ 53.]

Plaintiff argues that she and Andrews did not discover the discriminatory acts that occurred in the administration of Case No. 09-0857 and Case No. 09-0858 until they finally gained access to the un-redacted record on appeal. Before the Case No. 09-0857 Decision and the Case No. 09-0858 Decision became final, Rohr submitted a complaint to various Commission personnel alleging that Andrews had been discriminated against in the administration of the Commission's program and services, in violation of ADA Title II, Section 504, and the VOCA. [Id. at ¶¶ 54-55.] Plaintiff emphasizes that from March 14 to April 1, 2006,[3] she wrote letters to the Commission requesting accommodation for Andrews's disability, including waiving the application deadline, a de novo hearing in Case No. 09-0857, and a correction to the Case No. 09-0858 Decision restoring the result reflected in the minutes. She argues that these

---

[3] The year is apparently an error, it may have been intended to refer to 2013 or 2016.

modifications were reasonable and necessary to avoid denial of Andrews's access to the Commission's program and services based on his disability.  Plaintiff argues that the Commission could have taken action to avoid the discrimination because the decisions were not final yet.  On April 5, 2016, the Commission's executive director sent a letter acknowledging receipt of Plaintiff's letters but stating that no action would be taken. [Id. at ¶¶ 56-58.]  Plaintiff argues that the discrimination against Andrews was intentional because the Commission investigator, executive director, chairperson, commissioners, and attorney knew that it was substantially likely that Andrews's federally protected rights had been harmed, and they failed to act.  [Id. at ¶ 60.]

The Amended Complaint alleges a single claim – violation of 42 U.S.C. §§ 12132-34, and the implementing regulations, 28 C.F.R. Part 35.  [Id. at ¶¶ 61-65.]  Plaintiff alleges that, as a result of the Commission's actions and omissions, she and Andrews incurred expenses, suffered "loss of reputation, stigmatization, public humiliation, frustration, psychological trauma, emotional and physical distress, and loss of opportunity."  [Id. at ¶ 65.]  Further, Plaintiff alleges that the psychological trauma Andrews experienced caused him "emotional and physical distress [and] hastened his cancer and early death."  [Id.]

Plaintiff seeks the following relief: a declaratory judgment that the Commission's actions violated §§ 12131-34 and its implementing regulations; an order requiring the Commission to comply with the requirements of §§ 12131-34 and its implementing regulations; an order requiring the Commission to provide a new hearing in Case No. 09-0857; an order requiring the Commission to correct the Case No. 09-0858 Decision; an order requiring the Commission to develop a formal process to handle discrimination complaints; an award of compensatory damages; and any other appropriate relief.  [Id. at pgs. 28-31.]

## DISCUSSION

In the instant Motion, Defendant argues that this Court should dismiss the Amended Complaint because Plaintiff's claim is time-barred.  In Sharkey v. O'Neal, the Ninth Circuit recognized that "Title II of the ADA does not contain an express statute of limitations," and courts are not required to apply the same statute of limitations period to all parts of the ADA.  778 F.3d 767, 770 (9th Cir. 2015).  Further, the Ninth Circuit stated:

> The four-year catchall statute of limitations for actions arising under federal statutes enacted after December 1, 1990 is inapplicable, as the ADA was enacted on July 26, 1990 . . . .  Instead, we borrow the statute of limitations applicable to the most analogous state-law claim, so long as "it is not inconsistent with federal law or policy to do so." Wilson v. Garcia, 471 U.S. 261, 266-67, 105 S. Ct. 1938, 85 L. Ed. 2d 254 (1985), *partially superseded by statute as stated in* Jones [v. R.R. Donnelley & Sons Co.], 541 U.S. [369,] 377-80, 124 S. Ct. 1836[, 158 L. Ed. 2d 645

>     (2004)].  See also 42 U.S.C. § 1988; Goodman v.
>     Lukens Steel Co., 482 U.S. 656, 660, 107 S. Ct.
>     2617, 96 L. Ed. 2d 572 (1987).

Id.  It therefore held that the three-year limitations period that was applicable to the state counterpart of ADA Title II – Cal. Gov. Code § 11135 – applied to claims under Title II.  Id. at 772-73.

However, Hawai`i does not have a state counterpart to ADA Title II.  This district court has recognized that "the state's general statute of limitations for personal injury actions governs claims brought pursuant to . . . Title II of the ADA."  Imamoto v. Soc. Sec. Admin., Civil No. 08-00137 JMS/KSC, 2008 WL 4657811, at *4 (D. Hawai`i Oct. 21, 2008) (some citations omitted) (citing Nieves-Marquez v. P.R., 353 F.3d 108, 118 (1st Cir. 2003)).  Haw. Rev. Stat. § 657-7 states: "Actions for the recovery of compensation for damage or injury to persons or property shall be instituted within two years after the cause of action accrued, and not after, except as provided in section 657-13."[4]  Thus, this Court CONCLUDES that a two-year statute of limitations period applies to Plaintiff's ADA Title II claim.

---

[4] One of the exceptions in Haw. Rev. Stat. § 657-13 is if the plaintiff was "insane" when the cause of action accrued. § 657-13(2).  However, Plaintiff has not alleged that Andrews's mental impairments rose to the level of insanity for purposes of § 657-13.

This district court has stated that:

> Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss a claim for "failure to state a claim upon which relief can be granted[.]"  A Rule 12(b)(6) dismissal is proper when there is either a "'lack of a cognizable legal theory or the absence of sufficient facts alleged.'"  UMG Recordings, Inc. v. Shelter Capital Partners, LLC, 718 F.3d 1006, 1014 (9th Cir. 2013) (quoting Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990)).
>
> "A statute-of-limitations defense, if 'apparent from the face of the complaint,' may properly be raised in a motion to dismiss."  Seven Arts Filmed Entm't Ltd. v. Content Media Corp., 733 F.3d 1251, 1254 (9th Cir. 2013) (quoting Conerly v. Westinghouse Elec. Corp., 623 F.2d 117, 119 (9th Cir. 1980)); see also Rivera v. Peri & Sons Farms, Inc., 735 F.3d 892, 902 (9th Cir. 2013) ("When an affirmative defense is obvious on the face of a complaint, however, a defendant can raise that defense in a motion to dismiss.") (citing Cedars-Sinai Med. Ctr. v. Shalala, 177 F.3d 1126, 1128-29 (9th Cir. 1999)).

Reynolds v. Merrill Lynch Basic Long Term Disability Plan, Civ. No. 15-00109 JMS-RLP, 2015 WL 3822319, at *1 (D. Hawai`i June 19, 2015).

This Court agrees with Defendant that a possible statute-of-limitations defense is apparent on the face of the Amended Complaint.  However, based on the allegations in the Amended Complaint, it is also apparent that there are issues of fact as to Plaintiff's and Andrews's diligence and the timing of their discovery of the cause of action, particularly in light of Plaintiff's allegation that they were denied access to the records for the cases before the Commission.  See, e.g., Sheppard

v. Monsanto Co., CIV. NO. 16-00043 JMS-RLP, 2016 WL 3629074, at *6 (D. Hawai`i June 29, 2016).  This Court therefore CONCLUDES that Defendant is not entitled to a Rule 12(b)(6) dismissal of the Amended Complaint.

## CONCLUSION

On the basis of the foregoing, Defendant's July 6, 2016 Motion to Dismiss Amended Complaint Filed on June 6, 2016 is HEREBY DENIED.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, November 23, 2016.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**CLAUDIA ROHR V. CRIME VICTIM COMPENSATION COMMISSION; CIVIL NO. 16-00162 LEK-KSC; ORDER DENYING DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT FILED ON JUNE 6, 2016**