UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| CLAUDIA ROHR, | CIV. NO. 16-00162 LEK-RT |
| Plaintiff, | |
| vs. | |
| CRIME VICTIMS COMPENSATION COMMISSION, OF THE STATE OF HAWAI'I; | |
| Defendant. | |

**ORDER: 1) GRANTING DEFENDANT'S SECOND MOTION FOR SUMMARY JUDGMENT; AND 2) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

On March 6, 2019, Defendant Crime Victims Compensation Commission of the State of Hawaii ("Defendant" and "Commission") filed its Second Motion for Summary Judgment ("Defendant's Motion"), and on March 8, 2019, pro se Plaintiff Claudia Rohr ("Plaintiff") filed her Motion for Summary Judgment ("Plaintiff's Motion").[1] [Dkt. nos. 134, 137.] On March 25, 2019, Defendant filed its memorandum in opposition to Plaintiff's Motion, and Plaintiff filed her memorandum in opposition to Defendant's Motion. [Dkt. nos. 141, 143.] On

---

[1] On March 25, 2019, Plaintiff filed her Errata to Memorandum in Support of Motion for Summary Judgment Filed March 8, 2019, and on April 15, 2019, Plaintiff filed her Second Errata to Concise Statement of Material Facts in Support of Cross Motion for Summary Judgment ("Second Errata"). [Dkt. no. 142, 146.]

April 11, 2019, Plaintiff and Defendant filed their respective replies. [Dkt. nos. 144, 145.] The Court finds Defendant's Motion and Plaintiff's Motion (collectively, "the Motions") suitable for disposition without a hearing pursuant to Rule LR7.2(d) of the Local Rules of Practice for the United States District Court for the District of Hawaii ("Local Rules"). Defendant's Motion is granted, and Plaintiff's Motion is denied for the reasons set forth below.

## BACKGROUND

The factual and procedural background of this case is set forth in this Order Granting Defendant's Motion for Summary Judgment and Denying Plaintiff's Cross Motion for Summary Judgment, filed September 29, 2017 ("Summary Judgment Order"), and order denying Plaintiff's motion for reconsideration of the Summary Judgment Order, filed on January 16, 2018. [Dkt. nos. 94, 112.] The Court will only discuss the facts relevant to the Motions.

On June 6, 2016, Plaintiff filed her Amended Complaint as the sole beneficiary on behalf of her deceased husband, Scott Leland Andrews ("Andrews"),[2] alleging a single claim –

---

[2] This Court takes judicial notice that, on December 23, 2015, the Hawai`i Intermediate Court of Appeals ("ICA") granted Plaintiff's motion for substitution of parties in Andrews v. Crime Victim Compensation Commission, CAAP-12-0001109. See infra, Discussion, Section I; Pltf.'s Concise Statement of
(. . . continued)

violation of Title II, Part A of the Americans with Disabilities Act of 1990 ("ADA"), as amended by the Americans with Disabilities Amendments Act of 2008 ("ADAAA"), 42 U.S.C. §§ 12131-34, and its implementing regulations, 28 C.F.R. Part 35 ("Title II Claim").[3] [Dkt. no. 14 at ¶¶ 61-65.] On January 4, 2017, Defendant filed its motion for summary judgment, and on March 14, 2017, Plaintiff filed her cross motion for summary judgment. [Dkt. nos. 44, 65.] This Court granted Defendant's summary judgment motion after concluding Plaintiff lacked standing to allege a claim on behalf of Andrews, and denied Plaintiff's cross motion for summary judgment. [Summary Judgment Order at 17-18.] Judgment was issued in favor of Defendant on January 16, 2018. [Dkt. no. 113.] On February 14, 2018, Plaintiff filed her Notice of Appeal, and on December 3, 2018, the Ninth Circuit issued its memorandum disposition reversing the Summary Judgment Order, and remanding the case for this Court to "consider in the first instance whether summary judgment is appropriate on an alternate basis." [Dkt. no. 123

---

Material Facts in Supp. of Cross Motion for Summary Judgment ("Pltf.'s CSOF"), filed 3/14/17 (dkt. no. 66), Decl. of Claudia Rohr ("Pltf.'s Decl."), Exh. E (Order Granting Motion for Substitution of Parties).

[3] Plaintiff filed an errata to the Amended Complaint on August 10, 2016. Dkt. no. 21; and see 11/23/16 Order at 2-11 (discussing the factual allegations of the Amended Complaint).

at 2.[4]]  The Ninth Circuit issued its Mandate on December 26, 2018, and on December 27, 2018, this Court directed the parties to file their respective summary judgment motions.  [Dkt. nos. 126 (Mandate), 128 (entering order).]  The Court now considers anew whether summary judgment is appropriate.

In the Amended Complaint, Plaintiff alleges Andrews was assaulted three times from 2007 to 2008, and the assaults aggravated his pre-existing depression and/or bipolar disorder and anxiety.  [Amended Complaint at ¶¶ 13-19; Pltf.'s Decl. at ¶¶ 26-30 (discussing the assaults and Andrews's injuries).[5]] Andrews submitted an application to the Commission on December 7, 2009, for compensation for his medical and ambulance bills resulting from the April 21, 2008 assault ("4/21/08 Application"), and the December 12, 2008 assault ("12/12/08 Application").  [Amended Complaint at ¶ 21; Pltf.'s Decl.,

----

[4] The memorandum disposition is also available at 744 F. App'x 441.

[5] Local Rule 56.1(g) states: "For purposes of a motion for summary judgment, material facts set forth in the moving party's concise statement will be deemed admitted unless controverted by a separate concise statement of the opposing party."  Plaintiff did not file any separate concise statement of material facts, and instead appears to rely upon Plaintiff's CSOF in support of both her memorandum in opposition to Defendant's Motion, and Plaintiff's Motion.  See, e.g., Pltf.'s Mem. in Opp. at 3, 8, 11; Pltf.'s Motion at 3-4, 11, 13.  Plaintiff's CSOF does not directly address each of the statements of fact in Defendant's CSOF, however the Court will address this further, infra. Additionally, the Court takes note of the changes stated in Plaintiff's Second Errata as it applies to Plaintiff's CSOF.

Exh. Q (4/21/08 Application), Exh. R (12/12/08 Application).]
The 4/21/08 Application was assigned Case Number 09-0857 ("Case
857"), and the 12/12/08 Application was assigned Case Number 09-
0858 ("Case 858").  [Pltf.'s Decl., Exh. Q at 1, Exh. R at 1.]

        The Commission denied Andrews's 4/21/08 Application as
untimely in Case 857, but voted to pay Andrews's medical bills
submitted with the 12/12/08 Application in Case 858.  [Amended
Complaint at ¶¶ 36, 39, 43, 46; Pltf.'s Decl., Exh. H (minutes
of the Commission's vote on the two applications), Exh. I
(Commission Decision and Order in Case 858, dated 6/30/11).]
Plaintiff alleges the Commission's separate Decision and Order
in Case 857 and 858 were "served upon Andrews" at some point
prior to August 5, 2011.  [Amended Complaint at ¶¶ 43, 53.]
Andrews appealed the Commission's decisions as to both
applications to the Third Circuit Court of the State of Hawai`i
("state court"), and the appeals were consolidated in Andrews v.
State of Hawaii Crime Victims Compensation Commission, Civil
No. 11-1-299 ("State Action").[6]  [Amended Complaint at ¶¶ 43, 53;
Pltf.'s Decl., Exh. G (Decision & Order (1) Granting Appellee

_____

        [6] Andrews filed separate appeals from the Commission's
decisions in Case 857 and Case 858 under Civil No. 11-1-299 and
Civil No. 11-1-300, respectively, but the appeals were
consolidated at a later point under Civil No. 11-1-299.  See,
e.g., Pltf.'s Decl., Exh. F (Def.'s motion to dismiss and/or
strike Plaintiff's filing in the State Action, filed 8/24/12) at
1 (noting consolidated Civil Nos. 11-1-299 and 11-1-300).

Crime Victim Compensation Commission's Motion to Dismiss and (2) Dismissing Filings by Appellant Scott Andrews, filed 10/30/12 in State Action).] On October 30, 2012, the state court issued a decision and order dismissing Andrews's appeal of the Commission's decisions due to the state court's limited scope of appeal pursuant to Haw. Rev. Stat. § 351-17(b), and "the concomitant lack of jurisdiction to hear the appeal beyond any claims that the Commission's order or decision was in excess of the Commission's authority or jurisdiction." [Pltf.'s Decl., Exh. G at 8.] The ICA affirmed the state court's judgment on September 30, 2015 and issued the Judgment on Appeal on December 23, 2015. [Def.'s Concise Statement of Material Facts in Supp. of Motion ("Def.'s CSOF"), filed 3/6/19 (dkt. no. 135), Decl. of Kendall J. Moser ("Moser Decl."), Exhs. B (Summary Dispo. Order filed in Andrews v. Crime Victim Compensation Commission, No. CAAP-12-0001109), C (Judgment on Appeal, filed in same).] On April 5, 2016, the Hawai`i Supreme Court rejected Plaintiff's application for a writ of certiorari. [Id., Exh. D.]

Plaintiff wrote a letter dated March 31, 2016 regarding the 4/21/08 Application ("3/31/16 Letter") in Case 857, and a letter dated April 1, 2016 regarding the 12/12/08 Application ("4/1/16 Letter") in Case 858, to various Commission personnel and various Department of the Attorney

General personnel.  [Pltf.'s Decl., Exhs. X (3/31/16 Letter), Y (4/1/16 Letter).]  In the 3/31/16 Letter, Plaintiff stated the Commission discriminated against Andrews based on his disability by "refusing to accept Andrews' treating psychiatrist's determination that Andrews was unable to file an application with the Commission within 18 months of the April 21, 2008 assault due to psychological trauma of crime victimization on top of pre-existing diagnosed psychiatric disability, [and] refusing to grant a reasonable accommodation."  [Pltf.'s Decl., Exh. X at 2.]  The 3/31/16 Letter also argued the Commission used "too high a standard in their rule allowing for a late application for good cause" and "excessive, intrusive documentation requirement that had the effect of exacerbating psychological trauma from crime victimization.  Defeating accomplishment of the objectives of the Commission's program with respect to Scott Andrews."  [Id. at 3.]

In the 4/1/16 Letter, Plaintiff requested "a reasonable accommodation and/or reasonable modification of the Commission's procedures" by re-opening Case 858 to, *inter alia*, correct the decision in Case 858 and the improper reduction of the benefits that the Commission had voted to award Andrews, and authorize compensation for certain medical expenses excluded

from Andrews's award. [Pltf.'s Decl., Exh. Y at 2-3.[7]]

Plaintiff alleges she submitted these letters "[b]efore the State court proceedings were closed and while the adverse decisions and orders were inconclusive." [Amended Complaint at ¶ 55.] Pamela Ferguson-Brey, the Commission's Executive Director, responded in a letter dated April 5, 2016 ("Commission's 4/5/16 Letter"). [Pltf.'s Decl., Exh. Z.] The Commission's 4/5/16 Letter acknowledged receipt of the 3/31/16 Letter, and the 4/1/16 Letter, and stated that the issues raised in Plaintiff's letters "were raised and considered in the Commission hearing, the circuit court, and/or the appellate courts," and the cases were closed in light of the denial of Plaintiff's application for a writ of certiorari. [Id.]

The instant case followed. Plaintiff alleges the Commission's denial of Andrews's application in Case 857 was discriminatory because the Commission

> screened out Andrews from participating in and benefitting from the [Commission's] program and services using qualifying criteria that tended to screen out applicants with posttraumatic stress issues from crime victimization that would substantially limit the applicant's ability to think about and communicate about the traumatic incident and take the steps needed to fill out an

---

[7] The excluded medical expenses include: "$357.00 Hilo Hospital (service 12/13/2008), $182.28 HEPA (Dr. Morrison-service 12/13/2008), and $543.72 (Dr. Pollard-Service 12/12/2008)." [Pltf.'s Decl., Exh. Y (emphases omitted).]

>application and file within 18 months from the
>traumatic incident. . . .

[Amended Complaint at ¶ 28.] Sonja McCullen, the Commission's

investigator, allegedly "utilized rules, policies, practices,

and procedures that required too high of standard [sic] of proof

of disability" that "subjected Andrews to greater scrutiny than

others, public stigmatization, and loss of psychiatric

information privacy rights," thereby discriminating against

Andrews on the basis of his disability. [Id. at ¶¶ 25, 28.]

With regard to Case 858, Plaintiff alleges the Commission

reduced Andrews's payment award without reason and in a

discriminatory manner, and "applied the laws under which the

Commission functions differently to Andrews." [Id. at ¶ 49.]

Plaintiff alleges Andrews did not discover the details of the

discriminatory acts in both Case 857 and Case 858 until sometime

after February 12, 2013, because the Commission's records were

filed under seal in the State Action, and only became available

after the records were transmitted to the ICA. [Id. at ¶¶ 37,

54.] Plaintiff seeks various forms of declaratory and

injunctive relief for her Title II Claim, an award of

compensatory damages, and any other appropriate relief. [Id. at

pgs. 28-31.]

Defendant contends summary judgment is appropriate for

the following reasons: Plaintiff's claims are barred by res

judicata, collateral estoppel, and/or the Rooker-Feldman

doctrine;[8] Plaintiff's claims for monetary damages are barred by

the Eleventh Amendment; and Plaintiff's claims are barred by a

two-year statute of limitations.  Plaintiff argues she is

entitled to summary judgment on her sole claim because there are

no genuine issues of material fact that Defendant discriminated

against Andrews based on his disability.

**DISCUSSION**

**I.  Preliminary Matters**

First, Plaintiff did not file a separate concise

statement of material facts to either support Plaintiff's Motion

or dispute the statements of material facts in Defendant's CSOF.

However, she relies upon Plaintiff's CSOF, filed on March 14,

2017, in both Plaintiff's Motion and her memorandum in

opposition.  See, e.g., Pltf.'s Motion at 3-4, 11, 13; Pltf.'s

Mem. in Opp. at 3, 8, 11.  In deciding not to file a concise

statement in support of Plaintiff's Motion, Plaintiff explained

she was guided by Local Rule 10.2(d) which discourages

"submitting multiple copies of the same exhibit."  [Pltf.'s

reply at 4.]  The United States Supreme Court has instructed

that "[a] document filed *pro se* is to be liberally construed."

Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citation and

---

[8] See Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923);
D.C. Court of Appeals v. Feldman, 460 U.S. 462 (1983).

internal quotation marks omitted).  Given the Supreme Court's instructions regarding all pro se filings, the Court will consider Plaintiff's CSOF as to both Motions.

Second, the Moser Declaration, which seeks to authenticate Defendant's Exhibits A through D, is unsigned. [Def.'s CSOF, Moser Decl. at ¶¶ 3-6, pg. 3.]  "An unsigned declaration violates both 28 U.S.C. § 1746 and[Local] Rule 7.6." Quinones v. UnitedHealth Grp. Inc., 250 F. Supp. 3d 692, 697 n.7 (D. Hawai`i 2017), *reconsideration denied*, CIVIL NO. 14-00497 LEK-RLP, 2017 WL 2802721 (D. Hawai`i June 28, 2017).[9]  Because the Moser Declaration does not meet the requirements of § 1746, and Local Rule 7.6, it cannot authenticate Defendant's exhibits submitted in support of Defendant's Motion.

This Court may, however, take judicial notice of facts that are "generally known" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned" and is not subject to reasonable dispute.  See Fed. R. Evid. 201(b).  Matters of public record are not subject to reasonable dispute.  See United States v. Raygoza-Garcia, 902 F.3d 994, 1001 (9th Cir. 2018) ("A court may take judicial notice of undisputed matters of public record, which may include court records available through PACER." (citations omitted)).

---

[9] On July 28, 2017, an appeal was filed as to 2017 WL 2802721.

"A court may take judicial notice of its own records in other cases, as well as the records of an inferior court in other cases." In re Korean Air Lines Co., 642 F.3d 685, 689 n.1 (9th Cir. 2011) (citation, brackets, and internal quotation marks omitted)); but see Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 999 (9th Cir. 2018) ("a court cannot take judicial notice of disputed facts contained in such public records" (citation omitted)).

The Court will consider the exhibits attached to the Moser Declaration because those exhibits are: Plaintiff's Amended Complaint filed in the instant action; [Moser Decl., Exh. A;] the Summary Disposition Order and Judgment on Appeal from the ICA in the State Action; [id., Exhs. B, C;] and the order from the supreme court rejecting Plaintiff's application for writ of certiorari, [id., Exh. D]. This Court will take judicial notice of the existence of these documents, and, where appropriate, judicial notice of adjudicative facts. See Rule 201.

## II.  **Defendant's Motion**

### A.   **Statute of Limitations**

Defendant argues this Court previously ruled that the two-year statute of limitations applied to Plaintiff's Title II Claim, therefore it is time-barred. [Def.'s Mem. in Supp. of Motion at 13-14 (citing Court's Order Denying Def.'s Motion to

Dismiss Amended Complaint Filed on June 6, 2016, filed 11/23/16 ("11/23/16 Order") (dkt. no. 34) at 13).[10]]  Defendant also argues the Hawai`i State Tort Liability Act, Haw. Rev. Stat. § 662-4 contains a two-year statute of limitations for actions against the State.[11]

First, Defendant's reliance upon the 11/23/16 Order is incorrect because this Court issued a subsequent order withdrawing that portion of the 11/23/16 Order.  <u>See</u> Order Granting in Part and Denying in Part Pltf.'s Motion for Reconsideration of the Order Denying Def.'s Motion to Dismiss Amended Complaint Filed July 6, 2016, filed 2/28/17 ("Reconsideration Order") (dkt. no 59).[12]  The Reconsideration Order states:

> Plaintiff's Amended Complaint states a plausible argument that the four-year statute of limitations period pursuant to [28 U.S.C.] § 1658 **may** apply to her claim because Andrews may have been a person with disabilities under the ADAAA, but he may not have been under the ADA and the case law interpreting it prior to the ADAAA.

---

[10] The 11/23/16 Order is also available at 2016 WL 6996980.

[11] Haw. Rev. Stat. § 662-4 provides: "A tort claim against the State shall be forever barred unless action is begun within two years after the claim accrues, except in the case of a medical tort claim when the limitation of action provisions set forth in section 657-7.3 shall apply."

[12] The Reconsideration Order is also available at 2017 WL 776106.

> This Court therefore GRANTS Plaintiff's
> Motion for Reconsideration **insofar as this Court
> WITHDRAWS the portion of the 11/23/16 Order
> concluding that the two-year statute of
> limitations period in Haw. Rev. Stat. § 657-7
> applies to Plaintiff's claim.  This Court must
> make findings of fact regarding Andrews's alleged
> disabilities to determine which limitations
> period applies, and therefore the issue is not
> appropriate in ruling on a motion to dismiss.**

[Reconsideration Order at 9-10 (some emphases in original) (citation omitted).]

Defendant has not submitted any evidence that Andrews's disability falls under either the ADA or the ADAAA, therefore the Court cannot conclude whether the two- or four-year statute of limitations applies.

Second, federal claims look to state statutes of limitations "'**unless there is a federal statute of limitations or a conflict with federal policy.**'" <u>Bd. of Trs. of W. Conference of Teamsters Pension Tr. Fund v. H.F. Johnson Inc.</u>, 830 F.2d 1009, 1016 (9th Cir. 1987) (emphasis added) (quoting <u>South Carolina v. Catawba Indian Tribe, Inc.</u>, 476 U.S. 498, 106 S. Ct. 2039, 2044, 90 L. Ed. 2d 490 (1986)).  As stated in this Court's Reconsideration Order, if Plaintiff's Title II Claim was made possible by the ADAAA, then the four-year catch-all statute of limitations under § 1658 would apply.  [Reconsideration Order at 9.]  If Plaintiff's claim arises under the ADA, then "we borrow the statute of limitations applicable to the most

14

analogous state-law claim." See Sharkey v. O'Neal, 778 F.3d 767, 770 (9th Cir. 2015) (stating the four-year catch-all statute of limitations was inapplicable where the plaintiff did not contend that his claim was made possible by the post-1990 enactment of the ADAAA). This district court has held Hawaii's two-year statute of limitations under Haw. Rev. Stat. § 657-7 applies to an ADA claim. See Imamoto v. Soc. Sec. Admin., Civil No. 08-00137 JMS/KSC, 2008 WL 4657811, at *4 (D. Hawai`i Oct. 21, 2008). Again, since Defendant has not addressed whether Plaintiff's claim arises under either the ADA or the ADAAA, the Court cannot conclude whether it must borrow Hawaii's two-year, or apply § 1658's four-year, statute of limitations to Plaintiff's claim.

However, even if the longer four-year limitations period under § 1658 does apply, this Court must consider the date that Plaintiff's claim accrued. "A federal claim accrues when the plaintiff knows or has reason to know of the injury that is the basis of the action." Pouncil v. Tilton, 704 F.3d 568, 574 (9th Cir. 2012). The Ninth Circuit has stated that "the 'discovery rule,' which postpones the beginning of the limitations period from the date the plaintiff is actually injured to the date when he discovers (or reasonably should discover) he has been injured, . . . is already incorporated

into federal accrual law." Lukovsky v. City & Cty. of S.F., 535
F.3d 1044, 1048 (9th Cir. 2008) (citations omitted).

Defendant argues that, in Case 857, Plaintiff knew by
August 5, 2011 that Andrews's request for an extension of the
application period was denied because the Amended Complaint
alleges "[t]he July 30 2011 adverse Commission Decision and
Order for CVCC Case No. 09-0857 **was served upon Andrews** and **on
August 5, 2011** Andrews timely appealed to the Third Circuit
Court of Hawaii." [Amended Complaint at ¶ 43 (emphases added).]
The thrust of Defendant's argument is that Plaintiff has
judicially admitted that Andrews received notice of his injury,
*i.e.*, the denial of his untimely application in Case 857, and
therefore knew of, or had reason to know of, his injury on or
before August 5, 2011.[13]

To the extent the basis of Plaintiff's claim as to
Case 857 is that Andrews was "screened out" from benefitting
from the Commission's program and services, and was subjected to
certain practices that required "too high a proof of disability,
. . . overly broad documentation," see Amended Complaint at
¶ 28, there is no question of material fact that Andrews knew or

---

[13] "Judicial admissions are formal admissions in the
pleadings which have the effect of withdrawing a fact from issue
and dispensing wholly with the need for proof of the fact," and
unless amended, are binding on the party who made them. Am.
Title Ins. Co. v. Lacelaw Corp., 861 F.2d 224, 226 (9th Cir.
1988) (citations and quotation marks omitted).

had reason to know at least by August 5, 2011, that his request for accommodation based on his disability had been denied, and that he was denied the benefits of the Commission's program. Plaintiff alleges Andrews "was invited by letter from the Commission to appeal the [Case 857] Administrative Decision and Order" and Andrews participated in a June 23, 2011 hearing de novo before the Commission. [Id. at ¶¶ 38-39.] The Commission "restricted the inquiry into more evidence of good cause for Andrews submitting a late application." [Id. at ¶ 39 (internal quotation marks omitted).] Both Andrews and Plaintiff had an opportunity to present Andrews's patient records, including a Hilo Medical Hospital report concerning his high blood pressure, vertigo, and breathing problems, and to explain how Andrews's blood pressure rose when talking to police about the April 21, 2008 assault in the emergency room. [Id. at ¶ 40.] Andrews explained to the Commission that, during the application period, he was "so traumatized, anxious and hypervigilant" that he remained at home at all times, and had blood pressure and breathing problems that were life-threatening, and precluded him from thinking about filing an application. [Id.] Nevertheless, the Commission denied Andrews's request to accept his late application, and this decision was served upon Andrew prior to August 5, 2011.

Plaintiff has not attempted to correct or amend these allegations. In her memorandum in opposition, she only argues the Amended Complaint raises "issues of fact as to Plaintiff's and Andrews's diligence and the timing of their discovery of the cause of action, particularly in light of Plaintiff's allegation that they were denied access to the records for the cases before the Commission." [Pltf.'s Mem. in Opp. at 17 (citing 11/23/16 Order at 14).] She raises no arguments and points to no specific portion of the Commission's unsealed records that gave rise to her claim, and relies exclusively on her pleadings to raise a genuine issue of material fact. Plaintiff cannot simply rely on her pleadings to create a genuine issue of material fact on a motion for summary judgment. See Fed. R. Civ. P. 56(c)(1)(A); Miller v. Glenn Miller Prods., Inc., 454 F.3d 975, 987 (9th Cir. 2006) (holding that, after the moving party meets its burden on summary judgment, the nonmoving party must show, "**beyond the pleadings**, that there is a genuine issue for trial" (citing Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (emphasis added))). Instead, the judicial admissions in the Amended Complaint support findings that: Andrews made a request for a reasonable accommodation to file a late application based on his disability; he appealed the Commission's denial of his request at a June 23, 2011 de novo hearing; but he received the Commission's July 30, 2011 adverse

decision denying his request prior to August 5, 2011.  Thus, at

the latest, Andrews was aware that he was injured - *i.e.*, denied

the benefits of the Commission's program despite his request for

a reasonable accommodation – and his claim accrued, on or before

August 5, 2011.  See <u>Alexopulos ex rel. Alexopoulos v. S.F.</u>

<u>Unified Sch. Dist.</u>, 817 F.2d 551, 554 (9th Cir. 1987) (holding

that the plaintiff's claims accrued on the date the plaintiff

knew her son was excluded from school); <u>Frame v. City of</u>

<u>Arlington</u>, 657 F.3d 215, 238 (5th Cir. 2011) (en banc) ("Drawing

from the text of § 12132, an injury occurs (and a complete and

present cause of action arises) under Title II when a disabled

individual has sufficient information to know that he has been

denied the benefits of a service, program, or activity of a

public entity."); <u>C.C. v. Rocklin Unified Sch. Dist.</u>, No. 2:17-

cv-02645-MCE-AC, 2019 WL 803904, at *4-5 (E.D. Cal. Feb. 21,

2019) (ruling that the date the plaintiff learned of the

revocation of her interdistrict transfer permit was the date her

claim accrued).

 Even considering the record in the light most

favorable to Plaintiff,[14] there is no triable issue of material

fact that Andrews knew or had reason to know he was injured by

---

 [14] On a motion for summary judgment, the court must "view[]
the facts in the light most favorable to the nonmoving party."
<u>Crowley v. Bannister</u>, 734 F.3d 967, 976 (9th Cir. 2013).

August 5, 2011, and that his injury was due to the Commission's decision not to allow him to file a late application based on his disability. Applying either the two-year or four-year statute of limitations, Plaintiff's claim based on the denial of Andrews's late application in Case 857 is time-barred.

With regard to the portion of Plaintiff's claim based on Case 858, Defendant argues Plaintiff knew of her claim by April 24, 2013, when the Commission's records were unsealed. [Mem. in Supp. of Def.'s Motion at 14 (citing Amended Complaint at ¶¶ 46-48).] Indeed, in the Amended Complaint, Plaintiff alleges the Commission "voted to agree that Andrews was a victim of a [Haw. Rev. Stat. §] 351-32 enumerated crime and voted to agree to pay his medical bills," but the agency minutes reflecting this vote were not provided to Andrews until April 24, 2013. [Amended Complaint at ¶ 46.] Plaintiff alleges Ms. McCullen drafted the Commission Decision and Order, and "failed to include former Chair Lisa Dunn's, former Commissioners Dew Kaneshiro's and Tom Watts' decision, or the conclusions of law and findings of fact incorporated therein, agreed to by vote and recorded in the agency minutes," and "reduced the award to partial payment . . . without notice or authorization, and thereby actively restricted Andrews' access to full and meaningful opportunity for crime victim compensation

and the due process procedures offered others." [Id. at ¶¶ 48-49.]

Like Case 857, Plaintiff alleges Andrews was served with a copy of the June 30, 2011 Commission Decision and Order in Case 858 at some point prior to August 5, 2011, when Andrews filed his appeal of the Commission's decision in state court.[15] [Id. at ¶ 53.] In the June 30, 2011 decision, the Commission noted Andrews's application had been initially denied because the Commission found that Andrews was "not a victim of a crime for which compensation may be ordered," and that two subsequent de novo hearings took place on May 4, 2011 and June 23, 2011. [Pltf.'s Decl., Exh. I at 818 (quotations omitted).] The Commission noted Andrews had presented evidence that he incurred $2,483.27 in medical expenses for services rendered by the Hilo Medical Center and Hawaii Emergency Physicians Associated as a result of the injuries he sustained on December 12, 2008 related to bruises on his chest and thigh, but there was a $744.98 adjustment by the medical providers. [Id. at 819.] The Commission cited to Haw. Rev. Stat. § 351-31(c)-(d) (explaining

---

[15] The Amended Complaint alleges the Commission's Decision and Order in Case 858 is dated "July 30, 2011," however this appears to be a typographical error. See Amended Complaint at ¶ 53. Plaintiff submitted a copy of the "Commission Decision and Order for CVCC Case No. 09-0858" as Exhibit I to Plaintiff's Declaration, which is dated June 30, 2011. [Pltf.'s Decl., Exh. I at 821.]

how the Commission determines whether to make an award for
compensation and if any reduction in an award would apply),[16] and
Haw. Rev. Stat. § 351-32 (identifying the "crimes to which
part III of [Haw. Rev. Stat. Chapter 351] applies").[17] [Id. at
819-20.] Finally, the Commission found:

> After considering the evidence and testimony
> presented, the **Commission finds that the
> Applicant demonstrated that he had a bruise on
> his chest and a bruise on his thigh following the
> December 12, 2008 incident.**
>
> However, the Commission **is limiting the
> award to the December 12, 2008 medical treatment**
> of the two bruises inasmuch as (1) there is

---

[16] The Commission's conclusions of law stated, in relevant
part:

> HRS § 341-31(c) provides that "[i]n
> determining whether to make an award for
> compensation, the Commission may consider any
> circumstances it determines to be relevant, and
> shall consider the behavior of the Applicant, and
> whether the Applicant bears any share of
> responsibility for the crime which caused injury
> or death and the commission shall reduce the
> amount of compensation in proportion to the
> amount of responsibility for the crime which
> caused the victim's injury of death . . . ."
>
> HRS § 351-31(d) provides that "[n]o order
> may be made under this section unless the
> commission finds that: (1) The act or omission
> did occur; and (2) The injury or death of the
> victim resulted from the act or omission."

[Pltf.'s Decl., Exh. I at 819-20.]

[17] Sections 351-31 and 351-33 were amended in 2019. See
2019 Haw. Sess. Laws Act 237, §§ 1-2. All citations to § 351-31
refer to the statute in effect in 2011.

> insufficient evidence to determine whether Mr. L-
> -- or any other individuals present caused these
> bruises and (2) the Applicant bore a share of
> responsibility for the December 12, 2008
> incident."

[Id. at 820 (emphases added).]  The Commission awarded Andrews

$1,738.29, to be paid to Hilo Medical Center and Hawaii

Emergency Physicians Associated, and Commission Chair Lisa A.

Dunn signed the decision.  [Id. at 820-21.]

Based on the information in Plaintiff's Exhibit I,

Andrews and Plaintiff knew or should have known of the injury

that forms the basis of her Title II Claim as to Case 858 as of

August 5, 2011.  The June 30, 2011 decision informed Andrews

that the Commission voted to award Andrews payment pursuant to

Haw. Rev. Stat. Chapter 351, and that his award would be reduced

due to "insufficient evidence" as to who caused Andrews's

bruises, and the Commission's findings that Andrews "bore a

share of responsibility for the December 12, 2008 incident."

[Id. at 820.]  Moreover, Andrews was aware the Commission

decided to award payment for certain medical expenses only,

which appears to be a calculation of the noted medical expenses

submitted by Andrews in the amount of $2,483.27, less the

$744.98 adjustment.  [Id. at 819-20.]  Although Plaintiff

alleges she "did not discover the discrimination . . . until she

had access to the un-redacted version of the consolidated second

record on appeal," she was fully aware of Andrews's **injury**,

*i.e.*, that his award would be reduced due to his potential involvement in the December 12, 2008 incident and limited to certain medical expenses, upon receipt of the Commission's June 30, 2011 decision. See <u>Alexopulos</u>, 817 F.2d at 554; <u>Frame</u>, 657 F.3d at 238. Since Plaintiff judicially admitted the June 30, 2011 decision in Case 858 was served on Andrews before he filed his appeal in the State Action on August 5, 2011, [Amended Complaint at ¶ 53,] Andrews knew or had reason to know of his injury by that date.

The Ninth Circuit's decision in <u>Stanley v. Trustees of California State University</u>, 433 F.3d 1129 (9th Cir. 2006), supports this reasoning. The plaintiff in <u>Stanley</u> alleged she was sexually harassed by her professor while attending California State University, Sacramento ("University"), which caused her to withdraw and return to the program multiple times between the spring of 1999 and the fall of 2000. <u>Id.</u> at 1132. In September 2000, the plaintiff submitted a formal complaint of sexual harassment to the University; in April 2001, the plaintiff filed a claim with the California State Board of Control seeking compensation for the sexual harassment and the University's failure to act on her complaints; and, on May 23, 2002, she filed her action in federal court alleging a hostile environment sexual harassment claim, under 20 U.S.C. § 1682 ("Title IX"), based on the same factual allegations. <u>Id.</u>

On appeal, the plaintiff argued the district court
incorrectly applied the applicable statute of limitations to her
Title IX claim.  The Ninth Circuit disagreed, explaining: "[T]he
touchstone for determining the commencement of the limitations
period is notice: a cause of action generally accrues when a
plaintiff knows or has reason to know of the injury which is the
basis of his action."  Id. at 1136 (alteration in Stanley)
(citations and quotation marks omitted).  In review of the
plaintiff's arguments, the Ninth Circuit held that it was
"unnecessary to determine exactly when [the plaintiff] had
notice, because she certainly had reason to know of the injury
upon which her action was based when she filed a complaint
alleging virtually identical claims with the State Board of
Control on April 27, 2001."  Id.

In the instant case, Plaintiff sought de novo hearings
in both Case 857 and 858 upon notice that Andrews's applications
were denied.  [Pltf.'s Decl., Exh. AA (Crime Victim Compensation
Commission Appeal Hearing Script, dated June 23, 2011, noting
appeals in Case No. 09-856, Case 857, and Case 858).]  After the
Commission rejected Andrews's request for modification of the
deadline to submit his claim in Case 857 based on his
disability, and Andrews received a reduced award in Case 858,
like the plaintiff in Stanley, Andrews filed a complaint
appealing those decisions to the state court.  At that point,

25

Andrews and Plaintiff were fully aware of Andrews's injury, as evidenced by their attempt to appeal the Commission's decisions to the state court.  Because there is no genuine issue of material fact that Andrews was aware of his injury by August 5, 2011, the Court concludes his claim accrued as of this date.

### 1.   **Tolling**

Plaintiff argues equitable tolling applies to her claim because she did not discover the discriminatory acts until she received the Commission's unsealed records, and she mistakenly filed her complaint with the incorrect agency. [Pltf.'s Mem. in Opp. at 18-20.]  With regard to a federal claim that borrows a state's statute of limitations, the state's tolling laws apply.  See TwoRivers v. Lewis, 174 F.3d 987, 992 (9th Cir. 1999) (Bd. of Regents of the Univ. of N.Y. v. Tomanio, 446 U.S. 478, 485-86 (1980)).  Because it is not clear at this stage of the case whether the ADA or ADAAA gave rise to Plaintiff's claim, and a claim under the ADA would borrow Hawaii's two-year statute of limitations while § 1658 would apply to a claim under the ADAAA, this Court must consider both state and federal tolling provisions.  The Hawai`i Supreme Court has stated: "'Equitable tolling' is defined as '[t]he doctrine that the statute of limitations will not bar a claim if the plaintiff, despite diligent efforts, did not discover the injury until after the limitations period had expired.'"  Narmore v.

26

Kawafuchi, 112 Hawai`i 69, 75 n.15, 143 P.3d 1271, 1277 (2006)

(alteration in Narmore) (quoting Black's Law Dictionary 579 (8th

ed. 2004)).  Under federal tolling provisions, "a litigant

seeking equitable tolling bears the burden of establishing two

elements: (1) that he has been pursuing his rights diligently,

and (2) that some extraordinary circumstances stood in his way."

Redlin v. United States, 921 F.3d 1133, 1140 (9th Cir. 2019)

(citation and quotation marks omitted).  This doctrine cannot be

applied "to avoid the consequence of one's own negligence and

does not apply when a late filing is due to claimant's failure

to exercise due diligence in preserving his legal rights."  Id.

(citation and quotation marks omitted).

In the instant case, equitable tolling under either

state or federal law would not save Plaintiff's claim.

Plaintiff had notice of Andrews's injury by August 5, 2011 when

she filed the State Action, but was not diligent because she did

not attempt to assert her Title II Claim until April 5, 2016.

[Complaint (dkt. no. 1).]  Although she argues she diligently

pursued the Commission's records that were previously sealed in

the State Action, which led to the discovery of the Commission's

alleged discrimination, her efforts were misguided.  As

discussed above, none of those records were necessary for

Andrews or Plaintiff to file a Title II Claim because the

Commission's adverse decisions in Case 857 and Case 858 provided

ample notice of the cause of action. Further, because Plaintiff's claim did not require access to the Commission's records, no extraordinary circumstances exist to warrant equitable tolling.

To the extent Plaintiff argues she "filed a defective pleading in the wrong court during the statute of limitations," see Pltf.'s Mem. in Opp. at 20, she has not submitted a record of this filing to support her claim. See Fed. R. Civ. P. 56(c). Even if Plaintiff's argument could be construed as a statement made based upon her personal knowledge, Plaintiff did not explain when the alleged erroneous filing was made and if it would have fallen within either statute of limitations, which court it was filed in, or if it actually plead a Title II Claim. The Court therefore rejects Plaintiff's assertions that equitable tolling applies.

## 2. Continuing Violation

Nor is there a continuing violation that would make Plaintiff's claim timely. "The continuing violations doctrine extends the accrual of a claim if a continuing system of discrimination violates an individual's rights up to a point in time that falls within the applicable limitations period." Douglas v. Cal. Dep't of Youth Authority, 271 F.3d 812, 822 (9th Cir. 2001) (citation and internal quotation marks omitted). This district court has recognized that "'[t]he continuing

violations doctrine extends the accrual of a claim if

a **continuing system of discrimination** violates an individual's

rights up to a point in time that falls within the applicable

limitations period.'" Toma v. Univ. of Hawaii, 304 F. Supp. 3d

956, 964 (D. Hawai`i 2018) (emphasis in Toma) (quoting Douglas

v. Cal. Dep't of Youth Auth., 271 F.3d 812, 822 (9th Cir. 2001)

     Plaintiff's 2016 letters to the Commission asking that

it voluntarily provide a reasonable accommodation for Andrews's

prior applications, and the Commission's denial of these

letters, see Pltf.'s Decl., Exhs. X, Y, Z, was not a discreet

act that would create either a new cause of action or a

continuing violation.  "A 'refusal to undo a discriminatory

decision is not a fresh act of discrimination.'"  Conway v.

Standard Ins., 23 F. Supp. 2d 1199, 1200 (E.D. Wash. 1998)

(quoting Martin v. Southwestern Virginia Gas Co., 135 F.3d 307,

310 (4th Cir. 1998) (citation omitted)).  Moreover, "a mere

continuing **impact** from past violations is not actionable."  Knox

v. Davis, 260 F.3d 1009, 1013 (9th Cir. 2001) (emphasis in Knox)

(citations and quotation marks omitted) (holding that the

defendant's repeated denials of the plaintiff's privileges with

her clients was a continuing effect of her original suspension).

     The Court therefore finds the continuing violation

doctrine does not preclude application of either the two-year or

four-year statute of limitations to Plaintiff's claim.

Accordingly, the Court grants summary judgment in favor of Defendant because there is no genuine issue of material fact that Plaintiff was aware of Andrews's injury that gave rise to the instant action, by August 5, 2011.  Under either the two-year of four-year statute of limitations, Plaintiff's Title II Claim would be time-barred.

**B.    The *Rooker-Feldman* Doctrine**

Even if Plaintiff's claim was not time-barred, this Court would grant Defendant's Motion based on the Rooker-Feldman doctrine.

> "The Rooker—Feldman doctrine provides that federal district courts lack jurisdiction to exercise appellate review over final state court judgments." Henrichs v. Valley View Dev., 474 F.3d 609, 613 (9th Cir. 2007) (some citations omitted) (citing Rooker v. Fidelity Trust Co., 263 U.S. 413, 415–16, 44 S. Ct. 149, 68 L. Ed. 362 (1923)); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 482–86, 103 S. Ct. 1303, 75 L. [Ed. 2d 206 (1983)]. "Essentially, the doctrine bars 'state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced' from asking district courts to review and reject those judgments." Id. (quoting Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284, 125 S. Ct. 1517, 161 L. Ed. 2d 454 (2005)).

In re Price, 589 B.R. 690, 698 (D. Hawai`i 2018) (alteration in Price) (citation omitted) (ruling that the Rooker-Feldman doctrine did not preclude the plaintiff's federal claims because the federal action did not seek review of the state court's

judgment).  The <u>Rooker</u>-<u>Feldman</u> doctrine applies to both final

decisions and interlocutory orders.  <u>G.C. & K.B. Invs., Inc. v.</u>

<u>Wilson</u>, 326 F.3d 1096, 1103 (9th Cir. 2003) (citation omitted).

The doctrine bars both direct appeals of a state court judgment,

and de facto appeals.  <u>Fowler v. Guerin</u>, 899 F.3d 1112, 1119

(9th Cir. 2018) (citing <u>Noel v. Hall</u>, 341 F.3d 1148, 1156 (9th

Cir. 2013)).  However,

> This doctrine occupies "narrow ground," <u>Exxon</u>
> <u>Mobil Corp. v. Saudi Basic Indus. Corp.</u>, 544 U.S.
> 280, 284, 125 S. Ct. 1517, 161 L. Ed. 2d 454
> (2005), . . . and "does not preclude a plaintiff
> from bringing an 'independent claim' that, though
> similar or even identical to issues aired in
> state court, was not the subject of a previous
> judgment by the state court," <u>Cooper v. Ramos</u>,
> 704 F.3d 772, 778 (9th Cir. 2012) (quoting
> <u>Skinner v. Switzer</u>, 562 U.S. 521, 532, 131 S. Ct.
> 1289, 179 L. Ed. 2d 233 (2011)).

<u>Id.</u>

Although the clearest case for the application of the

<u>Rooker</u>-<u>Feldman</u> doctrine is one where "a federal plaintiff

asserts as a legal wrong an allegedly erroneous decision by a

state court, and seeks relief from a state court judgment based

on that decision," under certain circumstances it may still

apply.  <u>See</u> <u>Reusser v. Wachovia Bank, N.A.</u>, 525 F.3d 855, 859

(9th Cir. 2008).  The Ninth Circuit has stated:

> <u>Rooker</u>-<u>Feldman</u> may also apply where the parties
> do not directly contest the merits of a state
> court decision, as the doctrine "prohibits a
> federal district court from exercising subject
> matter jurisdiction over a suit that is a *de*

31

> *facto* appeal from a state court judgment."
> Kougasian v. TMSL, Inc., 359 F.3d 1136, 1139 (9th
> Cir. 2004) (citing Bianchi v. Rylaarsdam, 334
> F.3d 895, 898 (9th Cir. 2003)). A federal action
> constitutes such a *de facto* appeal where "claims
> raised in the federal court action are
> 'inextricably intertwined' with the state court's
> decision such that the adjudication of the
> federal claims would undercut the state ruling or
> require the district court to interpret the
> application of state laws or procedural rules."
> Bianchi, 334 F.3d at 898. In such circumstances,
> "the district court is in essence being called
> upon to review the state court decision."
> Feldman, 460 U.S. at 483 n.16, 103 S. Ct. 1303.

Id.

Plaintiff argues the instant action is not an appeal of the State Action because it alleges discrimination under Title II, which was not at issue in the State Action. This Court disagrees because the label of Plaintiff's claims in her state and federal proceedings do not necessarily govern the application of the Rooker-Feldman doctrine.

> "[A federal court] cannot simply compare the
> **issues** involved in the state-court proceeding to
> those raised in the federal-court plaintiff's
> complaint." Kenmen Eng'g v. City of Union, 314
> F.3d 468, 476 (10th Cir. 2002) (citing other
> circuits' authority in accord).[18] Rather, under
> Rooker-Feldman, "we must pay close attention to
> the **relief** sought by the federal-court
> plaintiff." Id.

Bianchi, 334 F.3d at 900 (emphases in Bianchi).

---

[18] Kenmen was overruled in part on other grounds by Exxon Mobil, 544 U.S. at 291-92, and Lance v. Dennis, 546 U.S. 459, 465-66 (2006).

Here, Plaintiff requests the same relief in the
instant action as the State Action, which was an appeal of the
Commission's decisions in Case 857 and Case 858.  For example,
Plaintiff asks this Court to order Defendant to take corrective
action in Case 857 by, *inter alia*, providing a new hearing "on
the merits" to permit Plaintiff to present new evidence, and to
have Defendant "withdraw the June 30, 2011 Commission Decision
and Order and replace it with a new unbiased version."  [Amended
Complaint, Prayer for Relief at ¶ C.]  Plaintiff seeks similar
corrective measures in Case 858, to have Defendant "redraft the
Commission Decision and Order and correct the award of the
victim compensation."  [Id. at ¶ D.]  In other words, Plaintiff
is again seeking a review of the Commission's decisions to
obtain a different outcome than what was achieved in the State
Action, but doing so in the guise of a Title II Claim.  Nor is
Plaintiff's request for declaratory and compensatory relief, or
an order to force the Commission to comply with Title II, in any
way different than her state court appeal of the Commission's
decisions.  [Id. at ¶¶ A, B.]  The gravamen of her request is
based on a review of Andrews's **individual applications**, not a
general challenge of the Commission's procedures.  See Feldman,
460 U.S. at 482-486 (discussing the distinction between a
general challenge to the validity of a state bar rule which the
district court has subject matter jurisdiction to hear, and a

particular challenge to a state court decision).  If this Court were to rule in favor of Plaintiff and grant her requested relief, it would impermissibly overturn the state court's ruling that "an appeal based solely on the Commission's decisions on the facts to grant or deny an award **should not be reviewable**." See Pltf.'s Decl., Exh. G at 4 (emphasis added); Bianchi, 334 F.3d at 900 ("we cannot grant the relief [the plaintiff] seeks without 'undoing' the decision of the state court").  In doing so, this Court would trespass upon subject matter jurisdiction reserved solely for the United States Supreme Court.  See Exxon Mobil, 544 U.S. at 292 (citations omitted) (holding that 28 U.S.C. § 1257 "vests authority to review a state court's judgment solely" with the United States Supreme Court).  Thus, even if Plaintiff's claim were not time-barred, this Court would lack subject matter jurisdiction to hear Plaintiff's claim based on the Rooker-Feldman doctrine.

### CONCLUSION

On the basis of the foregoing, Defendant's Second Motion for Summary Judgment, filed on March 6, 2019, is HEREBY GRANTED, and Plaintiff's Motion for Summary Judgment, filed on March 8, 2019, is HEREBY DENIED.  The Court DIRECTS the Clerk's Office to enter final judgment in favor of Defendant on **August 20, 2019**, unless Plaintiff files a motion for reconsideration of this Order by **August 19, 2019**.

34

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAI`I, July 22, 2019.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

CLAUDIA ROHR VS. CRIME VICTIMS COMPENSATION COMMISSION; CV 16-00162 LEK-RT; ORDER: (1) GRANTING DEFENDANT'S SECOND MOTION FOR SUMMARY JUDGMENT; AND (2) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT